IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **THELMA STRONG**, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | **Complaint and Jury Demand** |
| **QUEST DIAGNOSTICS** | ) | |
| **CLINICAL LABORATORIES, INC.**, | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| *Defendant*. | ) | |

## COMPLAINT

NOW COMES Plaintiff, THELMA STRONG ("Strong" or the "Employee), by and through her attorneys of the law firm COLE SADKIN, LLC, and for her Complaint against Defendant, QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., ("Quest" or the "Company"), an Delaware for-profit corporation doing business in Illinois:

### NATURE OF ACTION

1. The present action is brought by Thelma Strong against her prior employer, Quest Diagnostics Clinical Laboratories, Inc. Strong alleges a variety of employment discrimination and resulting retaliation against the Defendant, and she seeks compensatory and punitive damages, and injunctive relief resulting therefrom.

2. Strong was terminated on or about August 8, 2018 (the "Termination Date"), in retaliation for filing a Workman's Comp Claim (the "WC") and a Family Medical Leave Act

1

Claim ("FMLA"). She has not found suitable similar employment despite making reasonable efforts to mitigate her damages.

**PARTIES**

3. Plaintiff is a Female and a citizen of the United States, and she resides in Illinois. She was employed by Quest Diagnostics Clinical Laboratories, Inc., as a Patient Service Representative from October 5, 2005 through August 8, 2018.

4. Defendant Quest Diagnostics Clinical Laboratories, Inc. is a Delaware corporation registered to do business within the State of Illinois and is an employer within the definitions 29 U.S.C. § 630(b), and 42 U.S.C. § 2000(e)(b). The Company's registered agent is Illinois Corporation Service located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703. The principle Illinois business address for the Company is 500 Plaza Drive, Secaucus, New Jersey, 07094. At all relevant times hereto, Quest Diagnostics Clinical Laboratories, Inc., was and continues to be, engaged in the business of patient medical laboratory testing.

**JURISDICTION AND VENUE**

5. This suit is brought to secure the protection of, and to redress the deprivation of, rights secured by The Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101, 12112, and 42 U.S.C. §§ 1981, 2000e-5, and 29 C.F.R. §825.100 (a), 42 U.S.C. § 1981(a) ("Title VII").

6. There is no other civil action between these parties arising out of the same transaction or occurrence as alleged herein pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

7. Jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. § 1331, 28 U.S.C. § 1343 (a)(3), 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1988, and 42 U.S.C. §

12117.

8. Venue is proper in this Court by virtue of 28 U.S.C. § 1391(b).

9. Strong has met all administrative prerequisites to suit in that she filed a timely charge of discrimination against Quest Diagnostics Clinical Laboratories, Inc., with the Equal Employment Opportunity Commission ("EEOC") as Charge No. 440-2019-00021, a copy of which is attached hereto and made a part of Plaintiff's **Exhibit 1.** Plaintiff received a Right-to-Sue letter on or about April 10, 2019, a copy of which is attached hereto and made a part of Plaintiff's **Exhibit 2.** Plaintiff brings this action within the limitations periods of 29 U.S.C. § 621 *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 2000 *et seq*.

## STATEMENT OF THE FACTS

10. On or about August 5, 2005, Strong began employment with Quest Diagnostic Laboratories, Inc.

11. Pending her employment, Strong worked for Employer as a patient service representative earning eighteen dollars and fifty-nine cents per hour ($18.59).

12. From August 2005 through August 2012, Strong received no discipline from Employer and was an exemplary employee.

13. On or about August 1, 2012, Strong underwent surgery on both feet which would not impact her ultimate ability to perform her employment but would require significant time off for recuperation. She promptly informed Employer that she would need twelve (12) weeks off. Strong provided Employer with physician orders and Employer confirmed time off. Strong requests Family And Medical Leave Act ("FMLA") accommodations from Employer to recover from surgery. Employer approved her FMLA leave.

14. Employer informed Strong that her position was secure and that Employer would be accommodating to the needs of her disability. Strong interpreted Employer's accommodation statement as approval of her disability leave and that her position would be secured for her return. Strong promptly returned to Employer on or about November 1, 2012, and her work product was not affected.

15. Upon returning to work, Strong was informed by her supervisor that a new employee had been hired for her position as a Patient Service Representative. Strong was then transferred to the Saint Elizabeth Hospital location.

August 2014 Workplace Injury

16. On or about August 11, 2014, while performing routine tasks for her occupation, Strong fell off her chair at Employer's location when it broke. Strong notified Employer regarding her workplace injury, and she was instructed to take the day off to recuperate.

17. On or about August 12, 2014, Strong returned to work and informed Employer that she would need to see a physical therapist to rehabilitate her workplace injury. Supervisor David White informed Strong that Employer would accept her rehabilitation and to provide medical documentation upon her return.

18. On or about August 14, 2014, Strong was diagnosed by her primary physician, Karol Lakota-Treese, MD of PCC Communicate Center. Dr. Lakota diagnosed Strong with a lower-back injury resulting from her workplace injury. Dr. Lakota also diagnosed Strong with carpal tunnel resulting from her routine workload.

19. Pursuant to the August 2014 Lakota Diagnosis, Strong informed Employer that she needed medical leave or reasonable accommodation for her lower-back injury and carpal tunnel diagnosis.

20. Employer responded by not accommodating for her injury and stated that if she took time off she would be terminated. Out of fear of termination, Strong promptly continued to work despite her injuries.

Employer Exacerbation of Workplace Injury

21. On or about August 21, 2014, while employed at the Quest Diagnostics Oak Park location, Strong sustained further injuries via accidental needle puncture that was determined to have previously been used for patient testing of a Sexually Transmitted Disease.

22. As a result of her injury, Strong was transported to Concentral Medical Urgent Care Center for STD testing. Concentra Physicians called Strong to inform her that, due to an error, the wrong blood tests were conducted, specifically, Hepatitis and HIV testing.

23. Pursuant to the August 2014 Cocentral Diagnosis, Strong informed Employer that she needed medical leave or reasonable accommodation to recover from mental health and severe anxiety for this exacerbation. Strong began suffering from severe depression that greatly affected her sleep, resulting in medication prescriptions.

24. Employer responded by not accommodating for her injury and stated that if she took time off she would be terminated.

Strong Emotional Damage Related to Workplace Injury

25. Strong began suffering from ongoing emotional and mental health trauma

resulting from her injuries, and she continued routine evaluation under her Primary Doctors.

26. Upon evaluation from Dr. Lakota and her psychiatrist on or about August 23, 2014, Strong was diagnosed with Post Traumatic Stress Disorder ("PTSD") and was required to take twelve (12) weeks medical leave.

27. Pursuant to the August 2014 PTSD Diagnosis, Strong informed Employer that she needed twelve (12) weeks as reasonable accommodation for this emotional trauma. Strong requests FMLA accommodations from Employer to recover. Employer approved her FMLA leave.

28. Strong's Oak Park Supervisor, David White reviewed Strong's medical documentation and approved her accommodation and leave request.

29. On or about November 8, 2014, as a result of her recent injuries, Strong submitted a Workman's Compensation Claim to Employer.

30. Employer gave no indication to Strong that they would contest the Claim or retaliation based upon her filing.

Strong Returns to Employment in December 2014

31. On or about December 4, 2014, Strong returned to Employer and was able to continue her daily tasks despite recent injuries.

32. Strong interpreted her return to work to be of an adequate amount of time to recover from her mental health suffering. However, she continued to suffer mental health and physical impairments, including but not limited to a lower back disability, carpal tunnel syndrome and loss of sleep relative to PTSD.

33. On or about December 2014, Employer denied all disability claims made pursuant to Strong's November 2014 Workman's Compensation Claim.

34. From December 2014 through December 2015, Strong continued working at her position with no disciplinary action undertaken by the Employer. During this time period, Strong continued to suffer from work related panic attacks and remained under close evaluation for her Primary Doctors.

35. On or about December 1, 2015, Employer supervisor David White informed Strong that she was being transferred to Employer's 111 N. Wabash location due to a colleague's complaint. Strong requested clarification related to Employer's complaint but no documentation was provided.

36. Upon information and belief, Employer transferred Strong because her immediate colleagues were unwilling to accommodate her PTSD and workplace injuries.

37. From December 2015 through November 2017, Strong continued to suffer from PTSD and workplace injuries. However, her work performance did not suffer and she did not incur any workplace discipline.

Strong Requests Family Medical Leave Act in November 2017

38. On or about November 2017, Strong requests FMLA accommodations from Employer to grieve regarding her mother's serious health deterioration and death. Employer accepts Strong's FMLA request and grants her twelve (12) weeks leave.

39. On or about March 1, 2018, Cigna contacts Strong to inform that her FMLA leave is ending and that she must return to Employer. On or about March 16, 2018, Strong returns to Employer.

40. On or about March 28, 2018, Employer supervisor Latisha Martin documented a variety of prior disciplinary conduct towards Strong related to disruptive behavior. This documentation had not been shown to Strong previously. Specifically, Martin detailed prior disruptive behavior on the following dates:

- On or about August 12, 2016, Martin alleged Strong was tardy for work and was seen using her cell phone while drawing patient's blood.

- On or about December 22, 2016, Martin alleged Strong's daughter was running around the laboratory while patients were present.

- On or about December 13, 2017, Martin alleged Strong took personal calls and kept patients waiting.

41. On or about May 23, 2018, Martin issued Strong written discipline claiming she was seen putting confidential patient information into the trash.

42. On or about August 7, 2018, Martin issued Strong written discipline claiming she was once again seen confidential patient information into the trash.

43. From August 2005 through April 2017, Strong was a stellar employee and received no disciplinary action of any kind from management. Upon information and belief, disciplinary action received from April through December 2017 is pretext for intended termination by the Company against Strong.

44. On or about August 8, 2018, Strong was informed by Employer that she was being terminated. Strong was not provided written documentation or provided a formal reason for her termination.

Strong Files Administrative Complaint with EEOC

45. On or about April 4, 2019, plaintiff filed a charge of discrimination complaint against Quest Diagnostics with the Equal Employment Opportunity Commission ("EEOC").

46. On or about April 10, 2019, Strong obtained a Right-to-Sue letter from the EEOC based on disability and retaliation.

47. Due to the Company's wrongful termination, Strong has been out of work from August 2018 through the present. Not only has the Company's actions impeded Strongs' ability to recover lost wages and provide for her family, but also this has impeded her ability to seek new employment.

48. Strong has applied for a variety of similarly situated positions via LinkedIn, Indeed, and in-person through friends and co-workers. Strong spends approximately forty (40) hours per week actively seeking employment.[1] However, as of the date of this filing, said employment has not materialized.

49. Strong has applied for, and is actively denied, unemployment because of Company's contest.

50. Strong' health has been impacted in her ability to get back to a "normal way of life" following her trauma. She continues to be very anxious and worried about her work prospects and possibilities due to health and age.

51. As a direct result of the stress incurred from Company's termination, Strong is taking prescribed medication for her lower back problems exacerbated by this stress and anxiety. She is also seeing a therapist on a weekly basis to deal with the stress from not being able to provide for her family.[2]

---

[1] Specifics regarding Strong' mitigation of damages will be provided to Employer counsel promptly upon issuance of written discovery.
[2] Clarification of emotional damages will be provided to Employer counsel promptly upon issuance of written

52. Strong is currently doing her best to mitigate her damages by looking for both part-time and full-time work.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA"),
## 42 U.S.C § 12101, *et seq.*

53. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as if fully set forth herein.

54. At all times relevant to this action, Plaintiff was a "qualified individual with a disability" as that term is defined by 42 U.S.C. §12102 and 12111.

55. The conduct as described hereinabove constitutes discrimination on the basis of Plaintiff's disability including, but not limited to, Defendant's total and complete disregard for Plaintiff's physician documented disability.

56. Defendant intentionally and willfully discriminated against Plaintiff because she is disabled and/or because Plaintiff has a record of being disabled and/or because Defendant regarded Plaintiff as disabled. Similarly situated non-disabled employees were treated more favorable in the terms of privileges, and conditions of their employment as described hereinabove.

## COUNT II
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT, 29 U.S.C. § 2601, *et seq.*

57. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as if fully set forth herein.

58. Quest Diagnostics holds itself out as an employer covered by the Family and

---

discovery.

Medical Leave Act pursuant to 29 U.S.C. § 2601, *et seq.*

59. Pursuant to the December 2018 FMLA leave, Plaintiff was entitled to leave until March 2018 under FMLA after providing proper notice, pursuant 29 CFR 825.114.

60. During her FMLA leave, Defendant engaged in prohibited conduct under FMLA by interfering with, or denying Plaintiff's rights provided under FMLA. Quest's prohibited conduct includes, but is not limited to:

- Failing to acknowledge that Plaintiff was on FMLA leave,

- Pressuring Plaintiff to return back to work before the allotted twelve (12) weeks leave period expired.

- Terminating her upon her returning from FMLA.

61. As a direct and proximate result of the Defendant's wrongful acts and termination, Plaintiff sustained loss of earnings and earning capacity; loss of fringe and pension benefits; suffered mental anguish, physical and emotional distress, humiliation, and embarrassment; loss of professional reputation; and loss of ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

**COUNT III**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq* BASED ON HARASSMENT**

62. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as if fully set forth herein.

63. The actions of Defendant as perpetrated by its agents and as described and complained of above are unlawful employment practices in that they have the effect of discriminating against and creating a hostile work environment through discrimination

including but not limited to disability and exercised rights of FMLA leave, in violation of Title VII.

64. At all times relevant to this cause of action, Defendant had a duty under title Title VII to refrain from discriminating against, harassing, retaliating against, and permitting a hostile work environment for Plaintiff based on disability and FMLA leave.

65. Plaintiff was harassed on an almost daily basis by Company management.

66. Plaintiff reported the harassment on multiple occasions to her Supervisors and Company management, Despite this, Defendant did not take any action to investigate, remediate, stop, prevent, or otherwise address the hostile work environment.

67. Defendant's inaction caused the hostile work environment to continually escalate, eventually leading to Plaintiff's severe emotional distress.

68. The hostile work environment Plaintiff was subjected to was so humiliating and derogatory that it unreasonably interfered with her work performance, altered the conditions of her employment, and prevented the recovery of her work related injuries.

69. The discriminatory actions by Defendant, through its management agents and employees, were intentional and willful, and in deliberate disregard of, and with reckless indifference to, the federal laws, state laws, and the rights and sensibilities of Plaintiff.

70. Defendant, by and through its agents, engaged in the foregoing acts and conduct when it knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

71. There is a connection between the Plaintiff's disability, FMLA leave and the dissimilar treatment suffered by Plaintiff at the hands of Defendant.

72. Based on the disability discrimination, FMLA leave, hostile and abusive work environment, Plaintiff filed a Workman's Comp claim and exercised her rights to FMLA leave, which resulted in retaliation on behalf of the Defendant.

73. The discriminatory actions by Defendant were intentional and willful, and in deliberate disregard of, and with reckless indifference to, the federal laws, state laws, and the rights and sensibilities of Plaintiff.

74. The actions of Defendant against Plaintiff caused her great mental anguish, humiliation, degradation, emotional and physical pain and suffering, loss of professional reputation, lost wages and benefits, future pecuniary losses, and other consequential damages.

## COUNT IV
## RETALIATION FOR EXERCISE OF RIGHTS
## UNDER TITLE VII CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq*

75. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as if fully set forth herein.

76. As herein alleged, the Defendant, by and through its officers, managing agents and/or its Supervisors, illegally retaliated against Plaintiff by terminating her employment on the basis of her disbility discrimination, filing of her Work Comp and exercising her entitlement to FMLA leave. Defendant had no legitimate reasons for any such act, which is in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 *et seq*.

77. On at least one occasion beginning on or about August 21, 2014, Plaintiff engaged in protective activities when she filed for Workman's Comp and Company management denied all allegations related to her recorded disability and refused all payment.

78. On at least one occasion, Plaintiff exercised her entitled rights to FMLA based

on health care requirements of her mother's illness and the Company wrongfully terminated her employment upon returning from FMLA leave.

79. The wrongful termination was in retaliation for Plaintiff's Workman's Comp claim, medical leave relative to her disability and exercised rights of her FMLA leave.

80. Plaintiff was wrongfully terminated for pretextual reasons for opposing unlawful discrimination based on her recorded disability, after previouslly filing a Workman's Comp and taking her FMLA leave.

81. The adverse actions following her involvement in a protected activity within such a period of time raises an inference of retaliatory motivation.

82. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices.

## PRAYER FOR RELIEF

As a proximate result of the foregoing facts, Plaintiff has suffered loss of past and future wages and bonuses, the value of lost past and future benefits, incidental damages, and pain and suffering in the form of emotional and physical distress, anxiety, inconvenience, loss of enjoyment of life, loss of status and self-esteem.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A. Grant Plaintiff a permanent injunction enjoining Defendant Quest Diagnostics Clinical Laboratories, Inc. and its agents, successors, employees, attorneys, and those acting in concert with the Defendant and at Defendant's request, from continuing to violate The Americans with Disabilities Act of 1990; The Family And Medical Leave Act; Title VII.

B. Grant Plaintiff compensatory damages, including damages for emotional distress, in an

14

amount to be determined at trial;

C. Grant Plaintiff all lost wages, past and future, to which she is entitled;

D. Grant Plaintiff punitive damages in an amount to be determined at trial; and

E. Grant Plaintiff such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, medical bills, attorneys' fees, and interest.

<u>Cole Sadkin, LLC</u>                                          Respectfully submitted

Mason S. Cole
20 South Clark Street, Suite 500                               Thelma Strong
Chicago, Illinois 60603
colesadkin.com
(312) 548-8610
mcole@colesadkin.com                                           By: /s/ Mason S. Cole
Firm ID: 49001                                                 **One of her Attorneys**
*Counsel for Plaintiff*                                        **Mason S. Cole, Esq.**

## DEMAND FOR TRIAL BY JURY

Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this Complaint.

Dated: July 3, 2019

Respectfully submitted,

Thelma Strong

By: /s/ Mason S. Cole
**One of her Attorneys**
**Mason S. Cole, Esq.**

Cole Sadkin, LLC.
Mason S. Cole
20 South Clark Street, Suite 500
Chicago, Illinois 60603
colesadkin.com
(312) 548-8610
mcole@colesadkin.com
Firm ID: 49001
*Counsel for Plaintiff*