**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THELMA STRONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-CV-4519 |
| | ) | |
| QUEST DIAGNOSTICS CLINICAL | ) | Judge John J. Tharp, Jr. |
| LABORATORIES, INC., a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thelma Strong sued her former employer, Quest Diagnostics Clinical Laboratories, Inc. ("Quest") for violations of the ADA, FMLA, and Title VII. Quest moves to dismiss the complaint in its entirety. For the reasons discussed below, Quest's motion to dismiss is granted.

**BACKGROUND**

For the purposes of this motion, the court accepts all of the plaintiff's factual allegations as true and draws all reasonable inferences in her favor. Ms. Strong began working at Quest as a Patient Services Representative in 2005. Compl. ¶ 10, ECF No. 1. In her thirteen years at Quest, she suffered a series of injuries, both in the workplace and outside of it, resulting in three periods of leave under the Family and Medical Leave Act ("FMLA"). In 2012, Quest approved Strong's first FMLA leave for her recovery following foot surgery. *Id.* ¶ 12. Upon her return, after 12 weeks of leave, Strong was informed that a new employee had filled her position and that she would be transferred to Quest's Saint Elizabeth Hospital location. *Id.* ¶ 15.

In August 11, 2014, Strong fell off a chair that broke at work and was diagnosed three days later with a consequent lower-back injury as well as carpal tunnel from her routine work. *Id.* ¶¶ 16,

18. The complaint does not allege that her doctor indicated that she should not or could not return to work, or that she needed any accommodations to do so, but Strong requested medical leave and reasonable accommodations for her back injury and carpal tunnel. Quest denied that request, informing Strong that she would be terminated if she took time off work. *Id.* ¶ 20.

While at work a week later, on August 21, 2014, Strong was accidentally punctured with a needle that had been used for a patient's sexually transmitted disease testing. *Id.* ¶ 21. Although the allegations of the complaint are not clear on this point, it appears that the clinic where Strong was taken for blood testing performed the wrong test, prolonging the period of uncertainty Strong had to endure with respect to whether she had been infected. *Id*. ¶ 22. The complaint does not allege that Strong was infected, or how long it took to confirm the lack of infection, but Strong alleges that the anxiety she experienced as a result of this incident caused "severe depression that greatly affected her sleep, resulting in medication prescriptions." *Id*. ¶ 23. On August 23, 2014, two days after the incident, a psychiatrist diagnosed Strong as suffering from Post Traumatic Stress Disorder ("PTSD") and recommended 12 weeks of medical leave. *Id.* ¶¶ 26-27. Following her PTSD diagnosis, Quest approved Strong's request to take FMLA leave to recover. *Id.* ¶ 27.[1]

In November 2014, Strong submitted a workers' compensation claim related to her recent workplace injuries, which Quest denied a month later. *Id.* ¶¶ 29, 33. Strong returned to work in December 2014. *Id.* ¶ 31. She alleges that she "was able to continue her daily tasks despite recent injuries," *id.* ¶ 31, but "continued to suffer mental health and physical impairments, including but not limited to a lower back disability, carpal tunnel syndrome and loss of sleep relative to PTSD,"

---

[1] The complaint also alleges that Quest denied Strong's initial request for medical leave for anxiety and depression following the incident and notified her that she would be terminated if she took time off work. *Id.* ¶ 23. The timing of this denial is unclear, given that the complaint alleges that Quest approved her request for FMLA leave following her PTSD diagnosis two days after the needle puncture incident.

*id.* ¶ 32. Strong continued to work at Quest's Oak Park facility for the next year.[2] In December 2015, Strong's supervisor, David White, informed her that she would be transferred to Quest's Wabash Avenue location due to a colleague's complaint about her. *Id.* ¶ 35. The complaint does not describe the nature of the complaint, but Strong alleges, on information and belief, that she was transferred "because her immediate colleagues were unwilling to accommodate her PTSD and workplace injuries." ¶ 36.

In November 2017, Quest granted Strong's request to take 12 weeks of FMLA leave due to her mother's declining health and death. *Id.* ¶ 38. In March 2018, Cigna contacted Strong to notify her that her FMLA leave was concluding soon and that she needed to return to work. *Id.* ¶ 39. Two weeks after her return from leave, on March 28, 2018, Strong's supervisor, Latisha Martin, presented her with a document listing Strong's prior discipline due to instances of disruptive behavior in 2016 and 2017.[3] *Id.* ¶ 40. These instances included alleged tardiness for work, use of a cell phone while drawing a patient's blood, allowing Strong's daughter to run around the laboratory while patients were present, and taking personal calls while patients were waiting to be seen. *Id.* On May 23, 2018, Martin issued Strong with written discipline after Strong was reportedly seen placing confidential patient information in the trash. *Id.* ¶ 41. On August 7, 2018, Martin issued Strong with written discipline for the same offense. *Id.* ¶ 42. The next day, August 8, 2018, Quest informed Strong that she was being terminated. *Id.* ¶ 44. Quest did not provide any

---

[2] The complaint does not allege when Strong was transferred to the Oak Park location but indicates that is where she was working when the needle puncture incident occurred. *Id.* ¶ 28.

[3] It is unclear whether the document listed prior instances of discipline or instances of disruptive conduct only. The complaint refers to this list as "a variety of prior disciplinary conduct towards Strong related to disruptive behavior," but does not describe the associated discipline. Compl. ¶ 40. Strong's statement that she had never been disciplined between August 2005 and April 2017, *id.* ¶ 43, further obscures the answer.

written documentation or formal reason for the termination. *Id.* Strong maintains that she was a stellar employee. *Id.* ¶ 43.

On April 4, 2019, Strong filed a charge with the EEOC, alleging disability-based discrimination and retaliation against Quest. Pl.'s Ex. 1, ECF No. 1-1. After receiving her right-to-sue notice from the EEOC, Strong filed the present suit on July 3, 2019.

## DISCUSSION

As an initial matter, it is necessary to clarify two points that inform whether Strong's complaint may proceed. First, the parties' briefs do not distinguish between "claims" and "counts." A "claim" is 'the aggregate of operative facts which give rise to a right enforceable in the courts.'" *Florek v. Village of Mundelein,* 649 F.3d 594, 599 (7th Cir. 2011) (quoting *Original Ballet Russe v. Ballet Theatre,* 133 F.2d 187, 189 (2d Cir. 1943)). Claims "explain the plaintiff's grievance and demand relief," whereas counts "describe theories by which those facts purportedly give rise to liability and damages." *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 996 (N.D. Ill. 2013). Under the federal rules, a court may dismiss a complaint for failure to state a claim but may not strike individual legal theories from the complaint. *Zurbriggen v. Twin Hill Acquisition Co.*, 455 F. Supp. 3d 702, 719 (N.D. Ill. 2020); *see also BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.") What is at issue in a 12(b)(6) motion is the plausibility of the claim (or claims) under some theory—whether or not expressly identified in the complaint—not the viability of each legal theory identified in the complaint. Thus, to grant a motion to dismiss, the court must find that no legal theory plausibly supports the claim being challenged.

Second, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). A claim "may be supported by showing any set of facts consistent with the allegations in the complaint," but a "formulaic recitation" of a cause of action's elements will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 563 (2007). Put simply, though detailed factual allegations are not required, "to survive a motion to dismiss, a claim must be plausible." *Divane v. Northwestern University*, 953 F.3d 980, 987-88 (7th Cir. 2020).

Strong's facts give rise to three potential claims against Quest: disability-based discrimination, retaliation for taking FMLA leave and filing a worker's compensation claim, and being subjected to a hostile work environment. Strong brings four counts based on these claims: disability discrimination in violation of the ADA (Count I); violation of the FMLA (Count II); Title VII hostile work environment (Count III); and Title VII retaliation (Count IV). The Court addresses each count in the context of its associated claim, rather than chronologically.

## I. ADA Discrimination

Strong alleges that Quest discriminated against her in violation of the ADA. To set forth an ADA discrimination claim, a plaintiff must allege facts showing that "(1) he is 'disabled'; (2) he is qualified to perform the essential function of the job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." *Gogos v. AMS Mechanical Systems, Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013).

As an initial mater, Strong's ADA claim is governed by a 300-day statute of limitations, meaning that Strong was required to file her EEOC charge within 300 days of the alleged discriminatory action. *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) (noting that because the ADA's enforcement provision incorporates that of Title VII, ADA

discrimination claims are also subject to the same 300-day statute of limitations). Strong filed her EEOC charge on April 4, 2019, rendering June 8, 2018 the cut-off date for any actionable ADA discrimination. The complaint alleges only two actions by Quest after that date: the "written discipline" Strong received on August 7, 2018, after she was reportedly seen improperly discarding confidential patient information and Strong's termination the next day, on August 8, 2018.

Quest argues that Strong has failed to establish she was disabled within the meaning of the ADA in the eight months leading up to and at the time of her termination. A plaintiff must allege facts sufficient to plausibly show she is disabled. *Gogos*, 737 F.3d at 1172. Under the ADA, a disability is defined as either "a physical or mental impairment that substantially limits one or more major life activities," "a record of such impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Further, an episodic disability or one that is in remission qualifies as "a disability if it would substantially limit a major life activity when active." *Id.* § 12102(4)(D).

Strong does not clearly identify her disability in the complaint, but her response to the motion makes clear that the disability she refers to is PTSD, which she was diagnosed with in August 2014 and continued to suffer from between December 2015 and November 2017. Resp. at 2-3, ECF No. 19; Compl. ¶¶ 26, 37. As a result of her PTSD, Strong experienced loss of sleep after her return to work in December 2014. *Id.* ¶ 32. The ADA recognizes sleep as a major life activity. 42 U.S.C. § 12102(2)(A). The complaint goes on to allege that Strong "continued to suffer from PTSD" through November 2017. *Id.* ¶ 37.

The complaint does not, however, expressly allege that Strong was still suffering from PTSD during the actionable period of her remaining employment (June 8 to August 8, 2018). Quest seizes on that omission to argue that her claim must be dismissed because she was not disabled

during the run-up to her termination, but the argument is off-the-mark. To be sure, courts must determine whether someone is a qualified individual with a disability "as of the time the employment decision was made." *Bay v. Cassens Transport Co.*, 212 F.3d 969, 974 (7th Cir. 2000); *see also McCowan v. HSBC Bank USA, N.A.*, 689 F. Supp. 390, 400-01 (E.D.N.Y. 2010) (finding plaintiff did not have an actual disability because she was not suffering from depression for one year prior to, and at the time of, the adverse employment action). But courts are also required to draw all reasonable inferences in the plaintiff's favor when assessing the plausibility of a claim and a fair reading of Strong's complaint is that she continued to suffer from PTSD through the end of her employment with Quest and, in any event, her brief makes clear that she claims that she "still suffers" from PTSD today. "A party appealing a Rule 12(b)(6) dismissal may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see also Pierce v. Ill. Dep't of Human Servs.*, 128 Fed. Appx. 534, 437 (7th Cir. 2005) (finding it appropriate to supplement a complaint's allegations with those in a brief "so long as those assertions are *consistent* with the allegations in the complaint"); *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) ("[W]e have held that a plaintiff may supplement the complaint with factual narration in an affidavit or brief.") Further, that Strong alleges that her work performance did not suffer as a result of her PTSD does not merit dismissal, as the protections of the statute extend to those who can perform the requirements of the job without accommodation as well as those who require accommodation. Having adequately alleged that her PTSD interferes with a major life activity (sleep), Strong has adequately alleged that she was disabled within the meaning of the

statute when she was terminated. Even if the Court were to hold otherwise, Strong could likely cure this defect by repleading.[4]

Strong's disability discrimination claim does, however, suffer from a flaw that requires dismissal (albeit, without prejudice). That is its failure to identify an adverse employment action resulting from her disability. Strong describes Quest's discriminatory action as "Defendant's total and complete disregard for Plaintiff's physician documented disability." *Id.* ¶ 55. This allegation is too broad. Per the timeline discussed above, the only acts by Quest that occurred within the 300-day window prior to the filing of her EEOC complaint were the issuance of "written discipline" on August 7, 2018, and her termination on the next day. But Strong does not allege that she was disciplined or terminated ***because of*** her disability. *See Serwatka v. Rockwell Automatic, Inc.*, 591 F.3d 957, 961-62 (7th Cir. 2010) (disability must be a "but for" cause of the adverse employment action). Strong alleges instead that her termination "was in retaliation for Plaintiff's Workman's Comp claim, medical leave relative to her disability and exercised rights of her FMLA leave." Compl. ¶¶ 2, 79. Such allegations may support a retaliation claim, but they do not allege an ADA discrimination claim. Strong's failure to allege an adverse employment action because of her

---

[4] Alternatively, Strong might also be able to overcome this defect by adequately pleading that she was a qualified individual with a disability based on a record of her impairment or because Quest regarded her as disabled. 42 U.S.C. § 12102(1). Strong repeatedly refers to a "recorded disability" and a "record of being disabled" throughout the complaint, again, without naming the disability. Establishing discrimination based on a recorded disability is a more challenging showing that it would initially appear—a medical diagnosis submitted to an employer will not suffice. *See* 29 C.F.R. § 1630.2(k) (2012); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 510 nn.7, 8 (7th Cir. 1998) (finding that the ADA requires "not simply a diagnosis, but a record reflecting the kind of impairment that would impose a substantial limitation on one or more of the plaintiff's major life activities" and that the employer be aware of this record). To prevail on this basis, Strong would therefore need to allege that her record of disability documented substantial impairments to major life activities and that Quest was aware of this record. As another alternative, Strong may be able to establish that Quest "regarded" her as disabled at the time of her termination to satisfy the first element of her discrimination claim.

disability, and within the statute of limitations period, warrants dismissal of Strong's ADA discrimination claim (and, accordingly, Count I is dismissed).

**II.**   **FMLA Interference and Retaliation**

Strong supports her second claim—her termination in retaliation for exercising her FMLA rights and filing a worker's compensation claim—under both an FMLA interference theory (Count II) and as retaliation under Title VII (Count IV). Neither theory, nor any other potential avenue of liability, is cognizable, as discussed below.

**A. FMLA Interference**

Strong alleges that Quest violated the FMLA based on an interference theory. To succeed on an FMLA interference theory, a plaintiff must show that "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Pagel v. TIN Inc.*, 695 F.3d 622, 627 (7th Cir 2012). A plaintiff satisfies the first four elements where the employer has granted her FMLA leave, as is the case here. *Goelzer v. Sheboygan County, Wis.*, 604 F.3d 987, 993 (7th Cir. 2010) (finding first four elements undisputed because defendant allowed plaintiff to take FMLA leave). This discussion is therefore limited to the fifth element.

A two-year statute of limitations applies to FMLA violations, thus requiring plaintiffs to bring an action within two years of the violation.[5] Notably, the Seventh Circuit has declined to

---

[5] A three-year statute of limitations applies where a defendant acted willfully by either knowing or showing reckless disregard for the fact that its behavior was statutorily prohibited. *Sampra v. U.S. Dep't of Transp.*, 888 F.3d 330, 333 (7th Cir. 2018). "Willful" therefore implies more than mere awareness of an applicable statute; it is "considered synonymous with words such as 'voluntary, 'deliberate,' and 'intentional.'" *Id.* (internal quotations omitted). Strong does not provide any facts suggesting that Quest knew or recklessly disregarded the fact that her termination

apply the continuing violation doctrine to FMLA claims. *Barrett v. Ill. Dept. of Corrections*, 803 F.3d 893, 899 (7th Cir. 2015) (finding that three separate denials of FMLA leave were separate actionable violations, with "each one triggering its own limitations clock"). A plaintiff therefore cannot invoke periods of FMLA leave outside the statute of limitations period to allege one continuous FMLA violation against her employer. Accordingly, only Strong's final FMLA leave, from November 2017 to March 2018, is actionable.

Strong points to three instances of alleged FMLA interference on Quest's part: failure to acknowledge Strong was on FMLA leave, pressure to return to work before her leave had concluded, and termination upon her return. The complaint does not contain any factual support for the first two allegations. The closest Strong comes to supporting those allegations is alleging that Cigna contacted Strong to inform her that her FMLA leave was ending and that she must return to work in early March 2018. Compl. ¶ 39. Even assuming Strong was granted FMLA leave on the last day of November 2017, her twelve-week leave would have concluded by March 1, 2018. A single phone call by a non-party insurer advising that an employee must return to work at the end of the maximum period of authorized leave cannot reasonably be characterized as interference with FMLA leave; as alleged, this call appears to have served as nothing more than a reminder, not a means of pressure, and cannot support the weight Strong heaps upon it. Strong asserts in her response brief that "managers and/or supervisors would call and harass her in attempts to pressure her into retuning to work before her allotted leave period had ended," Resp. at 5, but there are no consistent allegations in the complaint and, as pleaded, the complaint—which acknowledges that Strong received the full 12 weeks of FMLA to which she was entitled—is

---

would violate the FMLA. As a result, the two-year statute of limitation applies. Strong does not argue otherwise.

inconsistent with the assertion in Strong's brief. *See Pierce*, 128 Fed. Appx. at 537 ("[I]f the additional factual assertions [in a brief] are *inconsistent* with the allegations in the complaint then they are irrelevant and must not be considered.") Strong will have the opportunity to amend her complaint to add such allegations, to the extent that she can do so consistent with the requirements of Rule 11.

That leaves Strong's termination as the only potential action constituting FMLA interference.[6] Under the FMLA, termination can qualify as a denial of benefits. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 827 (7th Cir. 2012). "A claim under the FMLA for wrongful termination can be brought under either a discrimination/retaliation or interference/entitlement theory." *Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). The only difference between the two avenues of liability is that the former requires proof of discriminatory or retaliatory intent, while the latter simply requires an employer's denial of an entitlement. *Id.* Courts have found termination constitutes FMLA interference where an employee is fired to prevent her from reassuming her pre-leave position. *See Goelzer*, 604 F.3d at 993 (termination to prevent an employee from returning to prior position constitutes FMLA interference); *Torzewski v. COSCO Shipping Lines North America, Inc.*, 414 F. Supp. 3d 1143, 1152-53 (N.D. Ill. 2019) (plaintiff plausibly alleged FMLA interference where his position was relocated after he took leave).

By contrast, a plaintiff cannot establish FMLA interference if she was terminated after taking FMLA leave and returning to her pre-leave position. *See Ennin v. CNH Industrial America*, 878 F.3d 590, 597 (7th Cir. 2017) (finding plaintiff's FMLA interference claim failed because plaintiff received the FMLA leave requested); *Nicholson*, 690 F.3d at 827-28 (finding employee's

---

[6] To the extent that the "discipline" Strong received on August 7 was distinguishable from her termination on August 8, the complaint does not explain that distinction and accordingly fails to plausibly allege that the discipline was sufficient to qualify as an adverse action.

termination two months after employer granted her isolated leave request did not constitute FMLA interference claim). That is the case here—Strong was terminated five months after returning from FMLA leave to her position as a Patient Services Representative at Quest's Wabash location. As a result, she has not plausibly alleged that Quest interfered with her leave or any other entitlement under the FMLA. Her claim is better understood through a retaliation theory of liability, as discussed below.

### B. Retaliation

Strong also frames her claim as wrongful termination in retaliation for taking FMLA leave and filing a workers' compensation claim, in violation of Title VII. As Quest correctly notes, Title VII is not the appropriate mechanism through which to bring claims based on disability discrimination, FMLA leave, or workers' compensation. Title VII encompasses discrimination claims related to an employee's race, color, religion, sex, national origin, or sexual orientation. 42 U.S.C.A. § 2000e-2(a); *Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731, 1754 (2020). The ADA, in turn, covers disability-based retaliation, while the FMLA is the appropriate mechanism for FMLA-based retaliation claims. 42 U.S.C.A. § 12203(a) (ADA retaliation); 29 U.S.C.A. § 2615(a)(2) (FMLA retaliation). But Quest ignores what is axiomatic: "the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Bartholet v. Reishauser A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). Identifying Title VII as the applicable legal theory is therefore not fatal to Strong's claim.

The facts of Strong's retaliation claim—that she was fired in retaliation for exercising certain statutorily protected rights—give rise to three potential theories of liability: FMLA retaliation, ADA retaliation, and retaliation under the Illinois Worker's Compensation Act. The Court considers each in turn.

1. FMLA Retaliation

In alleging an FMLA retaliation claim, a plaintiff must show that she engaged in a statutorily protected activity, suffered an adverse employment action, and that there is a causal link between the two. *King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017). Strong engaged in a statutorily protected activity in requesting and taking approved FMLA leave in November 2017.[7] *See Ryan*, 837 F. Supp. at 838 (N.D. Ill. 2011) (requesting and taking FMLA leave constitutes a statutorily protected activity). Strong also suffered an adverse action as Quest terminated her five months after she returned from leave.

The element of causation is less readily apparent. To determine causation between an FMLA-protected activity and an adverse action, the Court will "consider the evidence as a whole and ask whether a reasonable jury could draw an inference of retaliation." *King*, 872 F.3d at 842 (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764-66 (7th Cir. 2016)). Evidence of causation may include factors such as suspicious timing, ambiguous statements suggesting retaliatory intent, evidence that the formal reason for termination was pretextual, or disparate treatment of similarly situated colleagues. *Pagel*, 695 F.3d at 631. Suspicious timing alone is generally insufficient to support causation. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004) ("A temporal sequence analysis is not a magical formula which results in a finding of a discriminatory cause."); *Bucks v. Mr. Bults, Inc.*, 218 F. Supp. 3d 776, 781 (S.D. Ill. 2016) ("temporal proximity on its own is generally not enough to show a causal link"). Where temporal proximity alone is sufficient to show a causal link, the adverse action must have taken place "on the heels of protected activity." *King v. Preferred Tech. Grp.*, 166 F.3d 887, 893 (7th Cir. 1999) (finding employee's

---

[7] As discussed above, this period of leave remains the only actionable one under the FMLA's two-year statute of limitations.

termination one day after returning from FMLA leave sufficient to establish a prima facie case of retaliation); *see also McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796-97 (7th Cir. 1997) (two-day period between protected activity and discharge suggested causal link between the two).

Here, Strong returned from FMLA leave on March 16, 2018 and was terminated on August 8, 2018, almost five months after her return. Five months is far too long a period to suggest a causal link between her leave and termination on its own. *See Bucks*, 218 F. Supp. at 780-81 (four-month gap between FMLA leave and termination was not enough to demonstrate causation). The complaint, however, provides little else to bolster an inference of causation. Strong alleges in conclusory fashion that "disciplinary action received from April through December 2017 is a pretext for intended termination by the Company against Strong," Compl. ¶ 43, but Strong fails to describe the discipline or to allege that she did not commit the acts on which it was based. Further, it is not even clear that any of the purportedly pretextual disciplinary action was taken after Strong's FMLA leave began in November 2017. Nor can it be inferred from the complaint whether Strong is claiming that Quest only advised her of actionable misconduct committed prior to her FMLA leave after she returned from that leave; to the contrary, the complaint suggests that Strong was presented with a record of disruptive behavior that had resulted in "prior disciplinary conduct," Compl. ¶ 40. Strong may be able to supplement and clarify her claim, but as presently alleged these sparse, ambiguous, and inconsistent allegations do not permit a plausible inference that Strong was terminated because she took FMLA leave rather than because she had compiled a list of significant and disruptive misconduct. As a result, Strong has not alleged a retaliation claim giving rising rise to a plausible theory of liability under the FMLA.

2. ADA Retaliation

Strong's retaliation claim fares no better under an ADA theory of liability. To plead retaliation under the ADA, a plaintiff must also proceed by establishing the same three elements:

14

engagement in a statutorily protected activity, an adverse employment action, and a causal link. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010). Under the ADA, "statutorily protected activity can range from filing formal charges to voicing informal complaints to superiors." *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (internal quotations omitted). Strong has not offered any facts demonstrating that she engaged in an ADA-protected activity, other than filing her EEOC charge seven months after her termination. Accordingly, her claim also fails under an ADA theory of liability.

### 3. Retaliation under the Illinois Workers' Compensation Act

The Illinois Workers' Compensation Act ("IWCA") offers the last available avenue of liability for Strong's retaliation claim. The Illinois Supreme Court has recognized a common-law cause of action for retaliatory discharge under the IWCA, in cases where an employer terminates an employee in retaliation for bringing a worker's compensation claim. *Hillmann v. City of Chicago*, 834 F.3d 787, 793 (7th Cir. 2016). Contrary to Quest's assertion, Strong's claim under the IWCA is not time-barred. A plaintiff has five years from the time of the violation to bring a claim under the IWCA. *Fonesca v. Spraying Sys.*, 466 F. Supp. 3d 834, 851 (N.D. Ill. 2020) (citing *Lakin v. Skaletsky*, No. 08 C 842, 2008 WL 4662846, at *4 (N.D. Ill. Oct. 15, 2008)). Strong was terminated on August 8, 2018, and therefore had until August 8, 2023 to sue under the IWCA based on her termination.

To plead a retaliation claim under the IWCA, a plaintiff must show: (1) she was an employee at the time of the injury; (2) she exercised a right under the IWCA; and (3) she was discharged and the discharge had a causal connection to her IWCA claim. *Hillmann*, 834 F.3d at 793-94. Strong was a Quest employee at the time of her workplace injuries and exercised a right under the IWCA by filing a worker's compensation claim in November 2014.

Yet again, causation presents a problem here. As the Seventh Circuit has remarked, "[t]he element of causation in retaliatory-discharge law does most of the work of separating lawful discharges from unlawful retaliatory discharges." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 768 (7th Cir. 2013). Strong filed her workman's compensation claim in November 2014, presumably related to both the fall from her chair and accidental needle puncture in August 2014.[8] Quest denied all disability claims raised in her claim in December 2014, but did not terminate Strong until August 2018. These facts do not plausibly show that Quest retaliated against Strong for filing a worker's compensation claim, three and a half years after they had denied it. Further, Strong had other means of challenging Quest's denial of worker's compensation claim, including appealing the denial. 820 Ill. Compl. Stat. 305/19(f) (2012). As it stands, Strong has not plausibly alleged retaliation under the IWCA.

Strong's factual allegations do not give rise to a claim supported by any theory of liability discussed above. Counts II and IV of her complaint are accordingly dismissed.

## III.    Hostile work environment

Strong alleges that Quest subjected her to a hostile work environment related to disability and FMLA-leave discrimination, in violation of Title VII. Again, Title VII is not the proper mechanism to bring a disability-based hostile work environment claim. Assuming that Strong may bring a hostile work environment claim under the ADA,[9] however, she must establish the same

---

[8] Strong does not specify what her workers' compensation claim included, stating only that it was a "result of her recent injuries." Compl. ¶ 29.

[9] The Seventh Circuit has refrained from deciding whether a hostile work environment may be brought under the ADA. *Holyfield-Cooper v. Board of Education of the City of Chicago*, 604 Fed. Appx. 504, 508 (7th Cir. 2015); *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009); *Silk v. City of Chicago*, 194 F.3d 788, 804 (7th Cir. 1999). This Court follows the Seventh Circuit's lead in assuming that such a claim is cognizable under the ADA. *Holyfield-Cooper*, 604 Fed. Appx. at 508.

elements as required by Title VII, showing that "(1) she was subject to unwelcome harassment; (2) the harassment was based on [a protected characteristic]; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; (4) there is basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 833-34 (7th Cir. 2015).

Strong's hostile work environment claim stumbles right out of the gate. An ADA complaint is constrained by the allegations made in the EEOC charge. While courts construe EEOC charges liberally, "they must be like or reasonably related to the allegations of the charge and growing out of such allegations" to be cognizable. *Id.* at 831-32. The EEOC charge must at least identify the same individuals and the same conduct as the complaint. *Id.* at 832. While a plaintiff need not use the phrase "hostile work environment" in an EEOC charge to plead such a claim, she must describe the conduct that would give rise to it, such as harassment. *Id.* Strong's EEOC charge alleges disability-based discrimination and retaliation, but does not allege harassment or any other facts that would support a hostile work environment claim.

Setting aside the deficiency of the EEOC charge, the complaint does not contain any facts regarding a hostile work environment. Strong alleges for the first time in her brief that she was harassed daily by management and reported this harassment to no avail. As noted above, however, her complaint fails to support this claim, providing no information on what the harassment entailed, when it occurred and when she reported it, or who was responsible. Absent these facts, her allegations constitute a "formulaic recitation" of the elements required of a hostile work environment claim, not a plausible showing that she was subjected to harassment. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). *See also Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1034-36 (7th Cir. 2004) (affirming dismissal of hostile work environment claim where

17

complaint lacked "specific evidence of anything which could reasonable be considered either objectively or subjectively hostile").

Further, Strong does not allege that she was harassed because of her disability. Strong states only that "[t]here is a connection between the Plaintiff's disability, FMLA leave, and the dissimilar treatment suffered by Plaintiff at the hands of Defendant." Compl. ¶ 63. In a convoluted turn of phrase, she also alleges that Quest's unlawful employment practices "have the effect of discriminating against and creating a hostile work environment through discrimination including but not limited to disability and exercised rights of FMLA leave." *Id.* ¶ 71. These statements fail to plausibly link Quest's alleged harassment to Strong's disability. *See Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2011) (affirming dismissal of hostile work environment claim where plaintiff's allegations failed to suggest that gender motivated any of her employer's actions). As such, Strong has not plausibly alleged an ADA hostile work environment claim. Count III is therefore dismissed.

*     *     *     *     *

For the reasons discussed, Quest's motion to dismiss is granted, and the complaint is dismissed without prejudice. Ms. Strong is granted 21 days in which to file an amended complaint that cures the defects discussed, to the extent that she can do so consistent with the requirements of Rule 11. Failure to timely file an amended complaint will result in a dismissal of this case.

 Date: February 2, 2021

John J. Tharp, Jr.
United States District Judge